UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| RISEN ENERGY CO., LTD. <br>            Plaintiff, <br><br>     v. <br><br> UNITED STATES, <br>            Defendant, <br>   and <br><br> AMERICAN ALLIANCE FOR SOLAR <br> MANUFACTURING, <br>            Defendant-Intervenor. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Court No. 23-0153 |

# PLAINTIFF'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 15th St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: January 31, 2024

**TABLE OF CONTENTS**

I.     RULE 56.2 STATEMENT ...........................................................................................1

       A.     Administrative Determination Subject to Appeal .........................................1

       B.     Issues Presented ...........................................................................................1

II.    STANDARDS OF REVIEW......................................................................................1

III.   The Department's Application of The EBC Countervailing Duty Program to
       Risen Is Unsupported By Record Evidence And Contrary to Law...........................3

IV.    Conclusion and Prayer for Relief ............................................................................15

# TABLE OF AUTHORITIES

## CASES

*Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F. Supp. 2d 1333 (2006)............................3

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)............................................2

*Canadian Solar, Inc. v. United States*, 2020 Ct. Intl. Trade LEXIS 24; SLIP OP. 2020-23 (Feb. 25, 2020)...........................................................................................................................10

*Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ................................................................................................................................... 10-12

*Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-137 (Nov. 8, 2019)...................................................................................................... 10-11

*Changzhou Trina Solar Energy Co. v. United States*, 2018 Ct. Intl. Trade LEXIS 179; SLIP OP. 2018-167 (Nov. 30, 2018)...................................................................................................... 10-11

*Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-143 (Nov. 18, 2019).................................................................................................... 10-11

*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344 (Ct. Int'l Trade  2019)............................11

*Clearon Corp. v. United States*, 2020 Ct. Intl. Trade LEXIS 149 (Oct. 8, 2019)........................13

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938).....................................................1

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)...................................... 2-3

*Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1366-1367 (Fed. Cir. 2021) ..............................................................................................................................................15

*Diamond Sawblades Manufacturers' Coalition v. United States*, 547 F. Supp. 3d 1323 (Ct Int'l Trade 2021) ..........................................................................................................................15

*Diversified Products Corp. v. United States*, 572 F. Supp. 883 (1983)...........................................2

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) .....................................2

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018)................... 11-13

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1402 (Ct. Int'l Trade  2019).................. 11-12

*Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l Trade  2019).................. 11-12

*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade, 2019).................. 11-12

*Guizhou Tyre Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 86; Slip Op. 2020-81 (June 5, 2020) ................................................................................................................ 11-12

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (Ct. Int'l Trade  2019) ...................................................................................................... 11-12

*Jiangsu Zhongji Lamination Materials Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 41, SLIP OP. 2020-39 at 5 (Mar. 24, 2020) ............................................................... 11-12

*Mueller Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1231-32 (Fed. Cir. 2014) (quoting *Nippon Steel*, 337 F.3d at 1381) ........................................ 3-4

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ...................................... 3, 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) .................. 2

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364 (Ct Int'l Trade 2023) .................. 7-8, 15

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52 .......................................... 8-9

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 164 ............................................ 9

*Shandong Rongxin Imp. & Exp. Co. v. United States,* 163 F. Supp. 3d 1249 (Ct. Int'l Trade 2016)q .................................................................................................................. 2

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) ................................................ 2-3

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .......................................................... 1-2

*Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade  2019) ......... 11

**STATUTES & REGULATIONS**

19 U.S.C. § 1516a(b)(l)(A) ........................................................................................................ 2-3

19 U.S.C. § 1677e ................................................................................................................ *passim*

19 U.S.C. § 1677m(d) ......................................................................................................... 5-7, 14

I.       **RULE 56.2 STATEMENT**

Pursuant to Rule 56.2 (c)(1), Plaintiff Risen Energy Co., Ltd. ("Risen"), hereby states the administrative decision subject to appeal and the issues of law presented:

A.       **Administrative Determinations Subject to Appeal**

The U.S. Department of Commerce (the "Department") published the contested final results in the Federal Register on July 7, 2022. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020*, 88 Fed. Reg. 44,108 (July 11, 2023) ("Final Results"), *incorporating* Issues and Decision Memorandum ("IDM")*,* **PR366**.

B.       **Issues Presented**

1.       Issue One:  Whether the Department's application of adverse facts available ("AFA") to the China Ex-Im Bank's Export Buyer's Credit Program ("EBC" program or "EBCP") against Risen after they demonstrated non-use of the EBCP is supported by substantial evidence or otherwise contrary to the law?

II.      **STANDARDS OF REVIEW**

The Court will only sustain the Department's factual determination if it is based on substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)).   Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United*

*States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  Thus, "it is appropriate to set aside the ITA's

decision when the court 'cannot conscientiously find that the evidence supporting that decision is

substantial, when viewed in the light that the record in its entirety furnishes, including the body

of evidence opposed to [its] view.'" *Diversified Products Corp. v. United States*, 6 C.I.T. 155,

161, 572 F. Supp. 883, 888 (1983) (quoting *Universal Camera*, 340 U.S. at 488).  Moreover,

"Commerce's determination cannot be based on isolated tidbits of data which suggest a result

contrary to the clear weight of the evidence." *Shandong Rongxin Imp. & Exp. Co. v. United*

*States,* 163 F. Supp. 3d 1249, 1252 (Ct. Int'l Trade 2016) (internal citation omitted).  The

substantial evidence standard "requires more than mere assertion of 'evidence which in and of

itself justified {the determination}, without taking into account contradictory evidence or

evidence from which conflicting inferences could be drawn.'"  *Gerald Metals, Inc. v. United*

*States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera*, 340 U.S. at 487).

Further, the Court will also hold as unlawful any administrative decision that is arbitrary,

capricious, or an abuse of discretion.  *See* 19 U.S.C. § 1516a(b)(l)(A).  Normally, an agency

decision would be arbitrary and capricious "if the agency has relied on factors which Congress

has not intended it to consider, entirely failed to consider an important aspect of the problem,

offered an explanation for its decision that runs counter to the evidence before the agency, or is

so implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

(1983).  The Department acts arbitrarily and capriciously when it "consistently follow[s] a

contrary practice in similar circumstances and provide[s] no reasonable explanation for the

change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003).

It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient

reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48 (citations omitted). Internal inconsistency and self-contradiction do not satisfy this requirement. Indeed, a "principal justification for the administrative state is that in 'area[s] of limitless factual variations, like cases will be treated alike.'" *Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742, 462 F. Supp. 2d 1333, 1339 (2006) (internal citation omitted) ("Courts will therefore not defer to an agency regulation or adjudicative decision when they produce results which are arbitrary, capricious, or manifestly contrary to the statutory scheme."). Thus, when the administering agency treats similarly situated parties differently or fails to consider an important aspect of a problem, its decisions are arbitrary and capricious and subject to reversal.

**III.     The Department's Application of The EBC Countervailing Duty Program to Risen Is Unsupported By Record Evidence and Contrary to Law.**

The Department's use of adverse facts available ("AFA") to find that Risen benefitted from the EBC program when record evidence only contains evidence of non-use is unreasonable and unlawful. The Federal Circuit has described the application of AFA as a two-part inquiry. First, the Department must identify why it needs to rely on facts otherwise available, and second, the Department must show how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting from the facts otherwise available." *See* 19 U.S.C. § 1677e(b); *Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1381 (Fed. Cir. 2003) ("{T}he legislative history mirrors the language in the statute by recognizing that: (1) the Department must use facts otherwise available when requested information is missing and (2) the Department may impose an adverse inference after determining that a respondent has not been fully cooperative or has failed to act to the best of its ability in gathering information."); *Mueller*

3

*Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1231-32 (Fed. Cir. 2014) (quoting *Nippon Steel*, 337 F.3d at 1381).  The Department is allowed to use facts available only when "necessary information is not available on the record," or an interested party has withheld requested information, significantly impeded the investigation, or provided unverifiable information.  19 U.S.C. § 1677e(a).  As such, the Department must first establish its authority to act under Section 1677e(a) before it can properly invoke Section 1677e(b) and apply AFA.

In its Final Results, the Department found that the GOC had not cooperated to the best of its ability in response to Commerce's specific information requests, and "Risen's voluntary efforts to overcome the GOC's deficiencies in this case have failed to produce information sufficient to fill the gaps in the record resulting from the GOC's refusal to provide Commerce with the material requested and which Commerce deems essential to determine nonuse."  IDM at 14.  Thus, we find that the use of AFA is warranted, in accordance with section 776(a)(2)(A)-(C) and (b)." *Id*. at 18.  The Department restated the same issues from past reviews that it has found with the GOC's supposedly deficient responses to questions on this program, namely finding that the EBC loans can potentially be distributed to the importer's account from a partner bank of the China Ex-Im Bank, and then from there be sent to the exporter's bank account, such that if they do not know the names of these intermediary banks they cannot verify this program. *See* IDM at 18.

While emphasizing that it was the GOC, and not Risen, that the Department was applying AFA (despite it being Risen that bears the effect of the AFA), the Department explained that respondents nonetheless *could voluntarily* fill the gap left by the GOC:

> when the full universe of a respondent's U.S. customers voluntarily supplies
> certifications of non-use, Commerce has determined to take the additional steps

toward possible verification despite the GOC's continued refusal to provide certain information. Specifically, we may issue supplemental questions seeking complete lending information from the U.S. customers and then take steps to verify the customers' responses where the voluntary information provided covers the full universe of financing for all of a respondent's U.S. customers, which would make verification feasible, if so decided under Commerce's discretion, by allowing Commerce to meaningfully conduct its tracing and completeness tests at company. However, Commerce has acted on such voluntarily submitted information taking additional steps to gather additional information useful for verification only where a respondent in those cases submitted such certifications from all of its importer customers (indicating cooperation from the full universe of respondent's customers such that subsequent loan questionnaires and/or verification could reasonably confirm non-use of the program for that respondent despite the GOC's refusal to provide certain information).

IDM at 14-15.

The Department then continued to explain that Jinko had filled this gap by filing non-use certifications for all of its customers and then filing responses to the supplemental EBC questionnaire for all customers.  The Department only issued the EBC supplemental questionnaire to Jinko.  IDM at 15.  The Department explained that because Risen was unable to provide a certification from one customer that was unwilling to cooperate, the Department could not take any further steps to gather information from Risen to establish non-use.  Specifically, the Department claimed because of the one customer (as explained below, the customer only represented 1% of Risen's sales), there was only "partial information of non-use" and it "remains impossible, and contrary to Commerce's practice, to confirm non-use based on partial non-use information" and that the partial information "does not leave Commerce with a path towards further investigating, completely verifying (if Commerce exercised its discretion to do so), or otherwise ultimately determining the non-use of this program by Risen." *Id*.

The Department's refusal to request further information on this program or attempt verification is contrary to law.  If the certifications from all customers were required, then the Department was obliged to actually request the EBC certificates as part of the questionnaire or a

5

supplemental questionnaire.  The questionnaire does not request such information; rather, Risen

of its own initiative placed it on the record.  Risen cannot be faulted with failing to provide

information that the Department never requested and never identified as a deficiency in its

questionnaire response.  19 U.S.C. §1677m(d).  The fact that one Customer did not provide a

certification at Risen's request, does not entail that the Customer would not have provided

information at the Department's request.

This finding also fails to understand the full breadth of information on the record.  Risen

provided certifications for all of its customers except for one.  Risen Section III Resp. at Exhibit

18, **CR169-177, PR119-124**.  Risen is not affiliated with its customers and had no control over

the company to obtain the certification for the submission.  Risen explained that it could not

obtain the certification because of some disputes over business matters, and therefore this

customer refused to provide a certificate about their non-use of the Buyer's Credit program. *Id*.

at 40.  However, the record does still contain information demonstrating that this small customer

did not benefit from this program.  Risen provided the sales contract with the Customer, which

had no indication of the Export Buyer's program. *Id*. at Exhibit 18.  Risen responded and

certified that it never been involved in any loan applications under EBC for any customer.  Risen

understands that the exporter - in this case, Risen itself - must be aware of any such loan in any

case because the exporter has to be involved in the EX-IM Bank's loan evaluation and approval

proceeding and the post-lending loan management proceeding; this understanding is also

confirmed by the GOC's narrative response and exhibits. *See* GOC Initial Questionnaire Resp.

(May 27, 2022) at 146-152, Exhibits F-1 through F-3, **CR205-242, PR125-149**.  The GOC also

confirmed that all Customers, including the one that did not provide a certification, was not listed

in the EX-IM bank database.  *Id*. at 148, *see also* Exhibit F-4 (screenshots from the EX-IM bank

system).

In a recent opinion from this Court on the prior review of Risen's non-use of the EBC

program, this Court also found that the Department's decision that Risen failed to fill a gap when

the Department never identified the gap for Risen was not supported:

> Here, though, Commerce requested proof from Risen and JA Solar of how they
> knew their customers did not use the EBCP, and Risen and JA Solar demonstrated
> their knowledge through the certifications. Risen Initial Questionnaire Response
> at 41, Ex. 20. When Commerce found that the non-use certifications did not fill
> the gap because they were incomplete, it essentially declared the responses
> deficient. Thus, Commerce was required under § 1677m(d) to provide Risen with
> an opportunity to supplement the record…

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364, 1371 (Ct Int'l Trade 2023).  Likewise

in this review, the Department failed to request any certifications or identify and allow Risen to

remedy any perceived deficiency in Risen's provision of non-use information from its

Customers.

In the same opinion, the Court also cautioned the Department in their approach to

verifying non-use, reminding the Department that the customers are unaffiliated:

> On remand, Commerce may choose to attempt to verify the customer
> certifications. Throughout the long history of EBCP litigation in the court there
> has been an absolute dearth of evidence that any U.S. customer has ever used the
> program. No party has ever demonstrated that a U.S. customer has received
> financing through the EBCP. Thus, if Commerce chooses to attempt verification,
> the court expects that Commerce will not pursue onerous verification
> requirements. Commerce is attempting to verify non-use by U.S. companies that
> Commerce has no statutory right to investigate, many of whom are unaffiliated
> with respondents, and years after the customers conducted business with the
> respondents. If there were more evidence that Commerce would find anything
> relevant in the records of the non-affiliate customers, then perhaps rigorous
> verification would be necessary. Although why onsite visits would be helpful has
> not been explained. For now though, the court is unconvinced that Commerce
> would find any EBCP use. Commerce may attempt to verify but only to the extent
> it does not overly burden voluntary participants.

*Id*. at 1371-1372.  Indeed, in the remand of that review, where Risen was missing one

certification from on Customer, the Department requested the certification on remand and then

found non-use of EBC for Risen.  The Department did not find that it had to issue the

burdensome detailed supplemental questionnaire to find non-use.  The Department did not find it

must further verify the customers in order to find non-use, indeed it found that it could not given

the Court's directive not to overly burden the unaffiliated customers.

Based on this same reasoning, the Department cannot apply AFA to Risen when it failed

to identify and provide Risen the opportunity to remedy the perceived deficiency with the

information provided by Risen to establish non-use.  However, Risen also maintains that the

information on the record is wholly sufficient to establish non-use.

In an opinion of the earlier review, when a minority of Risen's customers did not

cooperate in providing a supplemental response or refusing verification, the Court also took issue

with the Department's application of AFA:

> Commerce cannot reasonably conclude that Risen did not supply information that
> rendered the missing data from the GOC irrelevant and essentially eliminated any
> gap in the record. Risen substantially complied with Commerce's investigation
> efforts and provided near complete data for Commerce to review even after the
> long passage of time. See Risen EBC Questionnaire Response at 1. The missing
> financial data from roughly 5% of sales involved smaller importers who likely did
> not have enough of an interest to justify sharing the sensitive financial
> information with Commerce years after the POR.2 Considering that the POR was
> five years ago, that Commerce changed its policy, and that Risen complied to the
> best of its ability, the court concludes it is unreasonable for Commerce to require
> perfection. All of the record evidence points to nonuse of the program at issue.
> Commerce's concern about potentially hiding the use of EBCP in the
> nonresponding companies is not reasonable when considering the collateral
> impact of AFA on the fully cooperating Risen, the age of this case, and the still-
> relevant initial complete set of nonuse declarations, which has not been seriously
> undermined. Substantial evidence does not support Commerce's continued
> application of AFA to Risen's detriment on this record.

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52, *13-14.  On remand, the

Department attempted in person verifications of those that did provide questionnaire responses

8

but when one customer refused, the Department again used this as a basis to apply AFA.  The

Court again found the Department's approach unlawful and the AFA results unreasonable given

the other information on the record:

> Both the non-use certificates and the financial records produced by the third-parties represent evidence of non-use that supports Risen's own statement that its sales were not involved in the EBCP program. No evidence presented to the court suggests that these statements are not punishable under 18 U.S.C. § 1001 if either Risen or a customer is lying.6 Commerce, nonetheless, sought to complete burdensome verification procedures presumably in order to determine whether or not the statements are true. Commerce has presented no evidence to the court that these companies are lying about their financials. Commerce has presented no evidence to indicate that the companies do not know what they are talking about.8 At this stage, every piece of evidence presented to Commerce and to the court supports the conclusion that Risen's sales were not aided by the EBCP. In the face of substantial evidence of non-use from Risen and its customers, and no evidence of use supported by actual evidence or any reasonable AFA inference, Commerce must not include a subsidy amount for EBCP.

*Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 164, *14-15.  The Court

considered the cooperation and evidence of non-use of the majority of Risen's customers and

that even for the minority customers that did not comply with all of the Department's requests,

the record information available still indicated non-use.  The reasoning of these opinions when

applied to the facts of this review must also find that the record as its stands only supports a

finding of non-use.  The only reasonable outcome is a finding of non-use overall, or at a

minimum for the 99%.

 Indeed, nothing prevented the Department from verifying non-use of the program for

Risen's other customers that represented 99% of its sales.  Indeed, notably, the Department

apparently was satisfied with Risen's answer that Risen and its other customers did not benefit

from this program and did not issue any supplemental questionnaires to Risen regarding EBC.  It

is unconceivable that Risen would not be aware of their existence as a beneficiary of EBC under

these circumstances.  Nonetheless, the Department found, as AFA, that Risen benefitted from the

EBC program because Risen did not fill the gap and the GOC did not provide a list of the alleged

partner banks/third-party institutions.  *See* IDM at 16.

Not only do we submit that Risen did fill the gap as described above, but the

Department's continued understanding that GOC failed to provide necessary information is also

in violation of the statute and case law precedents that prohibit the application of adverse

inferences against cooperating respondents when no necessary information is missing from the

record.  The Department can only select from facts otherwise available when a party to a

proceeding withholds or fails to provide "necessary information" that the Department requested.

*See* 19 U.S.C. § 1677e(a).  For any use of facts otherwise available to facts otherwise available

with adverse inferences, the Department must find that the gap in the record was caused by a

respondent's failure to cooperate to the best of its ability.  *See* 19 U.S.C. § 1677e(b); *Nippon*

*Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

The Department has not identified any gap by the GOC in the record with necessary

information missing.  Indeed, the only "missing information" that the Department purports was

not supplied are the EX-IM Bank's 2013 revisions, which allegedly contains identity of foreign

banks to whom the China EX-IM Bank could potentially disburse loans.  IDM at 14.  The U.S.

Court of International Trade has, however, repeatedly found this to be irrelevant information,

including in litigation stemming from prior administrative reviews of this CVD order.  *See*

*Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (Ct. Int'l Trade

2018) (*Solar Cells from China* POR 2014 first opinion; "*Changzhou Trina I*"); *Changzhou Trina*

*Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-137 (Nov. 8,

2019) (*Solar Cells from China* POR 2014 remand opinion; "*Changzhou Trina II*"); *Canadian*

*Solar, Inc. v. United States*, 2020 Ct. Intl. Trade LEXIS 24; SLIP OP. 2020-23 (Feb. 25, 2020)

(*Solar Cells from China* POR 2015, granting Commerce's request for voluntary remand to

reevaluate the AFA application on the EBC program); *see also*, *Guizhou Tyre Co. v. United*

*States*, 348 F. Supp. 3d 1261, 1270 – 71 (Ct. Int'l Trade 2018) (*OTR Tires from China* POR 2014

first opinion; "*Guizhou Tyre I*"); *see e.g., Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d

1346 (Ct. Int'l Trade  2019) (*OTR Tires from China* POR 2014 remand opinion); *Guizhou Tyre*

*Co. v. United States*, 415 F. Supp. 3d 1402 (Ct. Int'l Trade  2019) (*OTR Tires from China* POR

2014 second remand opinion); *Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (Ct. Int'l

Trade  2019) (*OTR Tires from China* POR 2015 first opinion); *Guizhou Tyre Co. v. United*

*States*, 415 F. Supp. 3d 1335 (Ct. Int'l Trade, 2019) (*OTR Tires from China* POR 2015 remand

opinion); *Guizhou Tyre Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 86; Slip Op. 2020-81

(June 5, 2020) (*OTR Tires from China* POR 2015 second remand opinion); *Changzhou Trina*

*Solar Energy Co. v. United States*, 2018 Ct. Intl. Trade LEXIS 179; SLIP OP. 2018-167 (Nov.

30, 2018) (*Solar Products from China* POR 2014-15 first opinion); *Changzhou Trina Solar*

*Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-143 (Nov. 18,

2019) (*Solar Products from China* POR 2014-15 remand opinion); *Clearon Corp. v. United*

*States*, 359 F. Supp. 3d 1344 (Ct. Int'l Trade  2019) (*Chlorinated Isos from China* POR 2014

first opinion); *Clearon Corp. v. United States*, 2020 Ct. Intl. Trade LEXIS 149 (Oct. 8, 2019)

(*Chlorinated Isos from China* POR remand opinion); *Yama Ribbons & Bows Co. v. United*

*States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade  2019) (*Narrow Woven Ribbons from China* POR

2015 first opinion); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d

1317 (Ct. Int'l Trade  2019) (*Aluminum Foil CVD Investigation* first opinion); *Jiangsu Zhongji*

*Lamination Materials Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 41, SLIP OP. 2020-39 at

5 (Mar. 24, 2020) (*Aluminum Foil CVD Investigation* remand opinion); *Risen Energy Co., Ltd. v.*

11

*United States*, SLIP OP. 2022-4 at 5 (May 12, 2022).

The *Changzhou Trina I* Court held that although the Department can choose among FA or AFA to fill the record, the "choice must fill in the information that is actually missing." *Changzhou Trina I*, 352 F. Supp. 3d at 1327.  Further, if the Department were to claim that record evidence – such as importer's certification of non-use of the EBC program– is unverifiable, the Department must "first reasonably show that such information is, in fact, unverifiable." *Id.*  On remand, the Department claimed that without the 2013 internal guidelines, "effective verification is stymied, if not completely impeded, as Commerce would be unable to effectively sort through and identify potentially-suspect transactions given the size of the respondent companies." *Changzhou Trina II*, SLIP OP. 2019-137 at 6 (quoting from the remand redetermination).  The Court, however, rejected the Department's claims and held:

> The court cannot sustain Commerce's determination that verification would be impossible or unduly onerous. Although Commerce has shown that the GOC failed to answer certain questions regarding the EBCP's operation, it is still not entirely clear to the court that the missing information is required to effectively verify respondent's non-use of the program. In order to avoid unnecessarily impacting cooperating parties because of the GOC's failure to cooperate, Commerce needs to at least attempt to verify the certifications of non-use in this case. *See Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342, SLIP OP. 2013-66 (CIT 2013) (noting that Commerce should "seek to avoid" adversely impacting a cooperating party). There appears to be enough information on the record for Commerce to identify potential suspect financial entries.

*Id.* at 11.

Likewise, in *Guizhou Tyre I*, the Court found that although certain information regarding the operation of the EBC program was missing from the case record, there was no gap in information concerning whether the respondent used the program.  *See generally, Guizhou Tyre I.*  The Court found that: "{w}hile the Department did note that information as to the functioning of the Program was missing, this finding was rendered immaterial by responses from both

Guizhou and the GOC as to the Program's use. This defect proves fatal to Commerce's

imposition of AFA." *Guizhou Tyre I*, at 1270.  The Court found explicitly that the GOC's failure

to fully respond to the Department's requests for information simply did not create the gap

needed to apply facts available or AFA. *See id.*  Further: "GOC unequivocally stated that the

respondents' customers did not use the Export Buyers Credit Program. In sum, Commerce had a

clear path to find non-use by either accepting the declarations submitted by Plaintiffs and their

U.S. customers or by verifying these declarations." *Id.* at 1270-71.

Essentially, the rationale behind all above-cited court opinions is the same, *i.e.*, the

Department has failed to explain the need for thoroughly understanding every single detail of

program's operations, nor does it illustrate beyond a conclusory sentence as to why such

understanding is necessary for verification. *See Clearon Corp. v. United States*, 2020 Ct. Intl.

Trade LEXIS 149, SLIP OP. 2020-141 at 32-33 ("Although Commerce, in the Remand Results,

takes the court through why it wanted this information, as has been found in other cases in this

Court, it is not clear that any of the missing information was "necessary" to Commerce's central

statutory inquiry, i.e., to determine whether the Export Buyer's Credit Program provided a

benefit to Heze.").  Yet again, "{t}he Department has assumed the conclusion—that a gap in the

record exists as a result of [China's] failure to cooperate—without addressing what 'constitutes a

"gap" in the record,' and by pointedly closing its eyes on the evidence provided by [Heze] that

would 'fairly detract[ ]' from its ultimate conclusion." *Id.* at 33 (internal citation omitted).

Indeed, in the instant proceeding, the Department has closed its eyes on Risen's and its

customers' statements of non-use, and impermissibly focused solely on the information that

GOC refused to supply, which is not "necessary information" to begin with.  The Department

has not identified any "gap" in the record which would then trigger the lawful use of facts

available or facts available with adverse inferences taking into account the information Risen and the GOC has supplied.

In any event, the Department did not notify Risen that it found any of Risen's responses and information deficient or unsatisfactory.  *See* 19 U.S.C. § 1677m(d) (requiring the Department to identify the deficiencies in a respondent's questionnaire and provide the respondent with an opportunity to cure the deficiencies).  Accordingly, the administrative record in this review provides the Department with no basis upon which to use adverse inferences against Risen and find that it benefitted from the EBC program.  As the Department itself chose not to attempt verification of Risen's responses and assertion of non-use regarding the EBC program, Risen's statements –which concern all of its customers--and its customers' declaration—which cover 99% of Risen's sales-- must be accepted as accurate.  Indeed, the record contains not one shred of evidence to the contrary.  Therefore, the Court should find that the record only supports a finding non-use of EBC by Risen.

Alternatively, Risen submits that at a minimum, the Court must find that AFA cannot be applied to the Customers that did provide non-use certifications.  The Department cannot use "facts otherwise available" under 19 U.S.C. § 1677e(a) or apply adverse inference under § 1677e(b) because necessary information is not missing from the record.  To comply with the statute and to act reasonably, the Department could weight-average the dollar value of their purchases reported by Risen with the dollar value of the sole non-responding U.S. customer and reduce the EBC deposit rate assigned.  For those 99% of Risen's sales, the Department received requested and verifiable information from Risen's customers.  The Department cannot use "facts otherwise available" under 19 U.S.C. § 1677e(a) or apply adverse inference under § 1677e(b) because necessary information is not missing from the record.  To comply with the statute, as

14

99% of Risen's buyers responded, the Department should at worst apply an EBC deposit rate of 5.46% x 0.01 = 0.0546%.  Such a determination would account for the fact that the Department has no basis to apply facts available to at least 99% of the data because no necessary information is missing.  *Diamond Sawblades Mfrs. Coalition v. United States*, 986 F.3d 1351, 1366-1367 (Fed. Cir. 2021) (finding the Department's application of AFA to the entire sales database was not supported by substantial evidence when the missing information only involved 2.5% of the sales.); *see also Diamond Sawblades Manufacturers' Coalition v. United States*, 547 F. Supp. 3d 1323 (Ct Int'l Trade 2021) (Upholding the Department's application of AFA to only the 2.5% of the sales); *see also Risen Energy Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 52, *14 (finding such a pro rata adjustment was a reasonable alternative if the Department determined it could not find non-use).

## IV.    Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not supported by substantial evidence or in accordance with the law.  Plaintiff respectfully requests that the Court remand this case for redetermination of the issues presented in this brief.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang[**]
**DEKIEFFER & HORGAN, PLLC**
Suite 1101
1156 15th St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Date: January 31, 2024

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **4,991** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

16