# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RISEN ENERGY CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 23-00153 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, | ) |
| | ) |
| Defendant-intervenor. | ) |

## ORDER

Upon consideration of plaintiff's motion for judgment upon the agency record, responses thereto, replies, the administrative record, and all other pertinent papers, it is hereby:

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce's final results are sustained in their entirety.

Dated: _____, 2024                    _____

       New York, NY                              JANE A. RESTANI, SENIOR JUDGE

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RISEN ENERGY CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 23-00153 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AMERICAN ALLIANCE FOR SOLAR | ) |
| MANUFACTURING, | ) |
| | ) |
| Defendant-intervenor. | ) |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                      RAVI D. SOOPRAMANIEN
                                 Trial Attorney
Spencer Neff                     Commercial Litigation Branch
Attorney                         Civil Division
Office of the Chief Counsel      U.S. Department of Justice
for Trade Enforcement and Compliance   Ben Franklin Station, P.O. Box 480
U.S. Department of Commerce      Washington, D.C. 20044
                                 Telephone: (202) 616-0856
                                 Facsimile: (202) 307-0972
                                 Email: Ravi.Soopramanien@usdoj.gov

April 10, 2023                   *Attorneys for Defendant United States*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

STATEMENT PURSUANT TO RULE 56.2 ............................................................ 2

I.    Administrative Determination Under Review ................................................ 2

II.   Issue Presented For Review ........................................................................... 2

STATEMENT OF FACTS ...................................................................................... 2

I.    Initiation Of Administrative Review .............................................................. 2

II.   Preliminary Results ....................................................................................... 4

III.  Final Results ................................................................................................. 5

SUMMARY OF ARGUMENT ............................................................................... 5

ARGUMENT ......................................................................................................... 6

I.    Standard Of Review ...................................................................................... 6

II.   Commerce's Finding, Based On An Adverse Inference, That Risen Benefitted
      From The Export Buyer's Credit Program Is Supported By Substantial Evidence
      And In Accordance With Law ....................................................................... 7

      A. Legal Standards ...................................................................................... 7

      B. Commerce's Finding That The Government Of China Withheld Necessary
         Information Is Supported By Substantial Evidence And In Accordance With
         Law ......................................................................................................... 8

CONCLUSION ...................................................................................................... 18

CERTIFICATE OF COMPLIANCE ....................................................................... 19

# TABLE OF AUTHORITIES

<u>Cases</u>

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ............................................................................. 7

*Bomont Indus. v. United States*,
   733 F. Supp. 1507 (Ct. Int'l Trade 1990) ............................................................ 10

*Changzhou Trina Solar Energy Co., Ltd. v. United States*,
   195 F. Supp. 3d 1334 (Ct. Int'l Trade 2016) ....................................................... 14

*Cleo Inc. v. United States*,
   501 F.3d 1291 (Fed. Cir. 2007) ............................................................................. 7

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ............................................................................................... 7

*Cooper (Kunshan) Tire Co., Ltd. v. United States*,
   539 F. Supp. 3d 1316 (Ct. Int'l Trade 2021) ....................................................... 15

*Cooper (Kunshan) Tire Co., Ltd. v. United States*,
   610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) ................................................. 15, 17

*Fine Furniture (Shanghai) Ltd. v. United States*,
   748 F.3d 1365 (Fed. Cir. 2014) .................................................................. 8, 9, 16

*Fujian Yinfeng Imp. & Exp. Trading Co. v. United States*,
   No. 21-00088, 2022 WL 4180886 (Ct. Int'l Trade Sept. 13, 2022) ................ 14, 15

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ............................................................................... 6

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ......................................................... 7

*Guizhou Tyre Co., Ltd. v. United States*,
   348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018) ......................................................... 8

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992) ............................................................................................... 7

*Micron Tech., Inc. v. United States*,
   117 F.3d 1386 (Fed. Cir. 1997) ........................................................................... 10

*Risen Energy Co., Ltd. v. United States*,
   570 F. Supp. 3d 1369 (Ct. Int'l Trade 2022) ....................................................... 12

*Risen Energy Co., Ltd. v. United States*,
   658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023) .......................................................... 13

*Risen Energy Co., Ltd. v. United* States,
   665 F. Supp. 3d 1335 (Ct. Int'l Trade 2023) .......................................................... 13

*Risen Energy Co., Ltd. v. United States*,
   2023 Ct. Int'l Trade LEXIS 52, Slip. Op. 2023-48 (Apr. 11, 2023) ........................ 12

*Risen Energy Co., Ltd. v. United States*,
   Consol. Ct. No. 20-03912, 2023 WL 8788862 (Ct. Int'l Trade Dec. 19, 2023) ....... 13

*Risen Energy, Co., Ltd. v. United States.*,
   Consol. Ct. No. 22-00231, 2024 WL 864345 (Ct. Int'l Trade Feb. 29, 2024) .......... 14

*RZBC Grp. Shareholding Co. v. United States*,
   No. 15-00022, 2016 WL 3880773 (Ct. Int'l Trade June 30, 2016) .......................... 14

*RZBC Grp. Shareholding Co. v. United States*,
   222 F. Supp. 3d 1196 (Ct. Int'l Trade 2017) .......................................................... 14

*Shandong Rongxin Imp. & Exp. Co. v. United States*,
   203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ............................................................ 7

*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) .................................................................................................. 6

Statutes

19 U.S.C. § 1516a ............................................................................................................. 6

19 U.S.C. 1677e .......................................................................................................... passim

19 U.S.C. § 1677m ...................................................................................................... passim

Regulations

19 C.F.R. § 351.301(c)(5) .............................................................................................. 18

Other Authorities

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*,
   77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) ......................................... 2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review*; 2019,
   87 Fed. Reg. 40,491 (Dep't of Commerce July 7, 2022) ............................... 10, 11, 16

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*,
    88 Fed. Reg. 1,355 (Dep't of Commerce Jan. 10, 2023) ........................................................ 4

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*,
    88 Fed. Reg. 44,108 (Dep't of Commerce July 11, 2023) ....................................................... 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    87 Fed. Reg. 6,487 (Dep't of Commerce Feb. 4, 2022). ......................................................... 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RISEN ENERGY CO., LTD., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 23-00153 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, | ) |
| Defendant-intervenor. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Pursuant to Rule 56.2 of this Court's rules, defendant, the United States, respectfully submits this response in opposition to the motion for judgment upon the agency record filed by plaintiff, Risen Energy Co., Ltd. (Risen). Risen Br., ECF No. 30. Risen challenges one aspect of the U.S. Department of Commerce's (Commerce) final results in the ninth administrative review of the countervailing duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells) from the People's Republic of China (China). As demonstrated below, Commerce's final results should be sustained because they are based upon substantial evidence and are otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

**I.    Administrative Determination Under Review**

The administrative determination under review is *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 88 Fed. Reg. 44,108 (Dep't of Commerce July 11, 2023) (final results), and the accompanying Issues and Decision Memorandum (IDM).  The period of review is January 1, 2020, to December 31, 2020.

**II.    Issue Presented For Review**

Whether Commerce's application of facts available with an adverse inference to determine that Risen benefitted from the Export Buyer's Credit Program (EBCP) is supported by substantial evidence and otherwise in accordance with law.

## STATEMENT OF FACTS

**I.    Initiation Of Administrative Review**

On December 7, 2012, Commerce published the countervailing duty order on solar cells from China.  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) (order).  On February 9, 2022, Commerce initiated the ninth administrative review of the order for the period of review of January 1, 2020, to December 31, 2020.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 6,487 (Dep't of Commerce Feb. 4, 2022).  On March 22, 2022, Commerce selected Risen and Jinko Solar Import and Export Co., Ltd. (Jinko) as mandatory respondents to the administrative review.  Respondent Selection Memorandum (P.R. 47).

On April 1, 2022, Commerce sent a questionnaire to the government of China regarding alleged subsidies.  Initial Questionnaire (P.R. 48) at Section II.  In that questionnaire, Commerce

specifically asked the government of China for information related to the EBCP, which

Commerce found to be countervailable in prior reviews of the order. *Id.* at II-37-II-38.

Commerce asked the government of China to provide, among other things, a list of all

partner/correspondent banks involved in the disbursement of funds under the EBCP and to

explain in detail all steps taken to determine that no customer of the respondent companies used

EBCP credits. *Id.* at II-38. On May 27, 2022, the government of China responded to

Commerce's questionnaire. GOC Initial Questionnaire Response (P.R. 125). In its response, the

government of China characterized Commerce's request for a list of partner banks as "not

applicable" because "to the best of the {government of China}'s knowledge, none of the

respondents applied for, used, or benefitted from," EBCP credits during the period of review. *Id.*

at 148. Regarding Commerce's request that the government of China detail all steps taken to

ensure no customer of the respondent companies used EBCP credits, the government of China

explained that it provided the list of the respondents' customers to the Export-Import Bank of

China, which in turn searched its records and confirmed that none of those customers received

EBCP credits during the period of review. *Id.* at 148 and Ex. F-4 (P.R. 147) (containing

screenshots of the Export-Import Bank of China's internal database search results). Citing to the

text of the Administrative Measures and Implementing Rules governing the EBCP, the

government of China asserted that Chinese exporters are involved in the evaluation process for

loans provided under the EBCP, such that these exporters would be better positioned to verify

whether their customers received loans under the program. *Id.* at 149-150 and Exs. F-2-F-3 (P.R.

147).

Commerce asked both mandatory respondents to provide a list of all customers to which

they exported during the period of review and to detail the steps they take to determine that none

of their customers used the EBCP.  P.R. 48 at III-35-36.  Risen reported a list of customers to

which it exported during the period of review and provided non-use certifications from all but

one of them.  Risen Section III Questionnaire Response (May 27, 2022) (P.R. 119) at 39-40 and

Exhibit 17 (C.R. 175).  Risen submitted its sales contract with the non-cooperating customer,

which it claimed contains no reference to the use of the EBCP.  *Id.* at 40 and Ex. 18 (C.R. 175).

Risen also claimed that its exports to this customer accounted for slightly more than one percent

of Risen's total U.S. exports of solar cells during the period of review.  *Id.* at 40.

## II.     <u>Preliminary Results</u>

On January 10, 2023, Commerce published the preliminary results of its review.

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the*

*People's Republic of China*, 88 Fed. Reg. 1,355 (Dep't of Commerce Jan. 10, 2023) (preliminary

resul*ts*), and accompanying Issues and Decision Memorandum (PDM).  Commerce preliminarily

calculated subsidy rates of 10.84 percent for Jinko and 21.22 percent for Risen.  *Id.*

Commerce preliminarily found that the use of an adverse factual inference was warranted

in determining the countervailability of the EBCP because the government of China did not

provide information that would allow Commerce to fully analyze the program.  PDM at 45.

Commerce preliminarily found that the government of China failed to cooperate with

Commerce's requests for information and therefore did not act to the best of its ability, and

therefore found as an adverse inference that Risen was a recipient of the EBCP.  *Id.* at 43.

Specifically, Commerce found that the government of China's refusal to provide a list of partner

banks warranted the application of an adverse factual inference because Commerce requires the

identity of partner banks to verify non-usage of the program.  *Id.* at 45.  Commerce then applied

to Risen, as facts available with an adverse inference, a rate of 5.46 percent, which was the

highest rate calculated for a similar or comparable program providing access to loans, the

Preferential Policy Lending Program, in an earlier administrative review proceeding covering

calendar year 2012.  *Id.* at 46.  Although Risen provided non-use certifications on behalf of most

of its customers, Commerce found that the record lacked information necessary to fully verify

non-use of the program, because not all of Risen's customers provided non-use certifications.  *Id.*

at 45.

### III.    **Final Results**

Commerce published its final results on July 11, 2023.  Because the government of China

failed to cooperate, withheld necessary information that Commerce requested, and significantly

impeded the investigation, Commerce did not alter its preliminary findings with respect to the

findings of Risen's use of the EBCP.  *See generally* IDM at Comment 1.  In response to

comments filed by Risen that the record contained no necessary missing information, Commerce

explained that information provided by Risen was insufficient to fill the gap created by the

government of China's non-compliance.  *Id.* at 13-14.  In this regard, Commerce explained that,

because one of Risen's customers signaled its unwillingness to cooperate with Commerce's

requests for information, Commerce was unable to conclusively verify non-use of the EBCP.  *Id.*

at 15.  On this basis, Commerce reaffirmed its preliminary finding, based on an adverse factual

inference, that Risen used and benefitted from the EBCP.  *Id.* at 18.

### **SUMMARY OF ARGUMENT**

Commerce's application of facts available with an adverse inference to find that Risen

used the EBCP is supported by substantial evidence and in accordance with 19 U.S.C.

§ 1677e(b).  The government of China failed to provide information necessary for Commerce's

understanding of the program.  Commerce thoroughly explained why such information was

necessary and, absent such information, why Commerce was unable to verify Risen's claimed non-use of the EBCP.  Thus, notwithstanding Risen's cooperation during its investigation, Commerce properly drew an adverse inference from facts available to conclude that Risen used and benefited from the program.

Although Commerce in other cases has verified non-use of the EBCP when respondents place non-use certifications on the record for each of their customers, the record in this case does not include non-use certifications for all of Risen's customers.  Despite Risen's claims to the contrary, none of the record evidence mitigates this lack of evidence, which is required for Commerce to be able to verify that Risen did not use the program.  Further, the circumstances that caused Risen's customer not to cooperate with its request for certification are immaterial to Commerce's finding, based on its practice, that it cannot verify non-use of the EBCP without non-use certifications from all of Risen's customers.  Finally, Commerce is not required to identify a deficiency in Risen's reporting, or grant Risen an opportunity to remedy such a deficiency, when Commerce did not ask for the non-use certifications in a questionnaire.

## ARGUMENT

### I.    Standard Of Review

The Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence on the record or otherwise unlawful.  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence.").  Substantial evidence connotes "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," taking

into account the entire record, including whatever fairly detracts from the substantiality of the evidence. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and quotation marks omitted).

Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Rather, when Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017) (recognizing "tremendous" deference to Commerce factual findings). It is thus improper to overturn a determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted), and the Court will not substitute its judgment for Commerce's in choosing between two fairly conflicting views, even if it could "justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

## II.    Commerce's Finding, Based On An Adverse Inference, That Risen Benefitted From The Export Buyer's Credit Program Is Supported By Substantial Evidence And In Accordance With Law

### A.  Legal Standards

The statute, at 19 U.S.C. § 1677e(a)(2)(D) provides that, when information provided by a respondent cannot be verified as provided in 19 U.S.C. § 1677m(i), Commerce "shall, subject to section {19 U.S.C. § 1677m(d)}, use the facts otherwise available in reaching the applicable

determination under this subtitle." Section 1677m(e) likewise provides that Commerce shall not decline to consider information if, among other factors, "the information can be verified." 19 U.S.C. § 1677m(e)(2).

Commerce relies on the facts otherwise available on the record to fill a gap in the record when necessary information is not available on the record, or when an interested party (1) withholds information that has been requested by Commerce, (2) fails to provide information by a deadline established by Commerce, (3) significantly impedes a proceeding, or (4) provides information that cannot be verified.  *See* 19 U.S.C. § 1677e(a).  Additionally, Commerce may use an adverse inference when selecting among the facts otherwise available on the record when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with {Commerce's} request for information{.}" 19 U.S.C. § 1677e(b)(1).

Commerce may apply an adverse factual inference to a foreign government interested party, even if the reliance on the adverse factual inference negatively affects a cooperative respondent.  *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) (*Fine Furniture*).  Before doing so, Commerce should generally attempt to fill the gap in the record with other evidence if possible.  *See*, *e.g.*, *Guizhou Tyre Co., Ltd. v. United States*, 348 F. Supp. 3d 1261, 1270 (Ct. Int'l Trade 2018).

**B.  Commerce's Finding That The Government Of China Withheld Necessary Information Is Supported By Substantial Evidence And In Accordance With Law**

Commerce's determination to apply an adverse inference, based on the government of China's failure to provide necessary information, to find that Risen used the EBCP is supported by substantial evidence and in accordance with law.  *See* IDM at Comment 1.  Specifically, Commerce found that the government of China refused to respond to Commerce's request for a list of partner banks under the EBCP, which Commerce requires to verify non-use of the

program. *Id.* at 18. Additionally, Commerce found that the government of China had failed to cooperate to the best of its ability in responding to Commerce's request for information by withholding the requested information, warranting imposition of an adverse inference under 19 U.S.C. § 1677e(b). *Id.* Therefore, Commerce's application of an adverse inference to the government of China is supported by substantial evidence and in accordance with law.

Although Commerce did not make an adverse finding as a result of Risen's failure to cooperate, the government of China's non-compliance precluded Commerce from verifying Risen's non-use of the EBCP and warranted the use of an adverse factual inference that had a negative collateral impact on Risen. Such a negative impact, when it is the result of the government of China's failure to cooperate, is consistent with the statute and is necessary to induce compliance from foreign government interested parties in future proceedings. *See Fine Furniture*, 748 F.3d at 1373 ("Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").

Risen argues that the record contains sufficient evidence to "fill the gap" created by the government of China's non-compliance and to allow Commerce to verify that Risen did not use the EBCP. Risen Br. at 6-10. In support of its argument, Risen cites its sales contract with its non-cooperating customer, which Risen claims as indication that its customer could not have received EBCP credits. *Id.* at 6 (citing P.R. 119 at 40 and Ex. 18). Risen also cites the government of China's initial questionnaire response, in which it claimed that exporters must be involved in, and therefore have knowledge of, any loan administered to a U.S. customer under the EBCP. Risen Br. at 6-7 (citing P.R. 147 at 149-152 and Exs. F-1-F-3). Finally, Risen cites

to the screenshots provided by the government of China of the Export-Import Bank's internal

database, which the government of China claims as demonstrating that none of Risen's

customers benefitted from the program.  Risen Br. at 6-7 (citing P.R. 147 at Ex. F-4).

 None of the evidence provided by Risen addresses the particular gap in the record created

as a result of the government of China's non-compliance, which pertains to whether Risen's

claims of non-use can be verified.  Commerce specifically found that it cannot verify claims of

non-usage without the list of partner banks that it requested from the government of China.  IDM

at 18.  How Commerce chooses to verify information relied upon in a proceeding is a matter of

Commerce's discretion because "Congress has implicitly delegated to Commerce the latitude to

derive verification procedures *ad hoc*."  *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1395

(Fed. Cir. 1997) (citing 19 U.S.C. § 1677m(i)).  Commerce's verification is intended to act as a

completeness test, which can entail extensive, multiday review of and access to a company's

books and records. *See Bomont Indus. v. United States*, 733 F. Supp. 1507, 1508 (Ct. Int'l Trade

1990) ("{V}erification is like an audit, the purpose of which is to test information provided by a

party for accuracy and completeness.").

 Risen contends that in several cases this Court has remanded to Commerce its application

of adverse facts available to adequately explain why the missing information from the

government of China concerning partner banks precluded it from verifying non-use of the EBCP.

Risen Br. at 7-14.  Although the Court has remanded to Commerce on the EBCP in several cases,

including those cited by Risen, most of these predate revisions to Commerce's practice with

respect to verifying the non-use of the EBCP.  *See Crystalline Silicon Photovoltaic Cells,*

*Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results*

*and Partial Rescission of Countervailing Duty Administrative Review*; 2019, 87 Fed. Reg. 40,491

(Dep't of Commerce July 7, 2022) (final results of admin. review), and accompanying Issues and Decision Memorandum at 22.

Pursuant to this revised practice, if Commerce receives non-use certifications from all of a respondent's customers in a given investigation, it will issue supplemental questionnaires seeking further information regarding these customers' loans and finances. *Id.* Upon receipt of satisfactory responses to these questionnaires, Commerce will, if appropriate, proceed to verify the responses provided by these customers. *Id.* Commerce will typically acquire information on all loans received by these customers and verify that those loans are accurately reported. *Id.* Without knowing the partner banks of the Export-Import Bank of China, which would limit the universe of potential loans that Commerce would be required to examine and to verify, Commerce's revised practice allows it to closely scrutinize the financial records of third parties when it is able to conduct a full verification of the respondent's customers. *Id.*

We acknowledge that the Court has remanded administrative determinations to Commerce in a number of cases following its revised practice toward verifying the non-use of the EBCP. Risen refers to two of these cases in its brief, Risen Br. at 7-9, which led to remand orders issued in connection with its earlier challenges to Commerce's final results in the sixth and eighth administrative reviews of the order. However, the issues that arose in these two cases, concerning the gap in time between the conclusion of the administrative review and Commerce's attempts to verify Risen's customers' records in the first, and Risen's inability to supplement the record with a full set of non-use questionnaires in the second, are distinguishable from the facts of this proceeding.

In proceedings concerning the sixth administrative review of the order, the Court granted Commerce's voluntary remand request so that it could consider whether to attempt verification

of Risen's and another respondent's customers. *Risen Energy Co., Ltd. v. United States*, 570 F. Supp. 3d 1369, 1373 (Ct. Int'l Trade 2022). Commerce attempted to verify the non-use certifications provided by Risen for all its customers by issuing supplemental questionnaires to each of them. Only half of these customers responded to these questionnaires. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand*, Ct. No. 20-03912, ECF No. 94-1 (first *Risen I* remand results) at 7-8. Commerce explained in its first remand redetermination that it could not verify the non-use information provided by Risen by only a portion of Risen's customers because doing so could provide Risen an opportunity to evade scrutiny by filing responses only from customers that have not used the EBCP. *Id*. at 9. The Court remanded to Commerce a second time, holding that substantial evidence did not support Commerce's continued application of adverse facts available, and ordering Commerce to attempt further verification of Risen and, if successful, to either accept a *pro rata* subsidy rate adjustment proposed by Risen or find non-use of the EBCP by Risen.[1]  *Risen Energy Co., Ltd. v. United States*, 2023 Ct. Int'l Trade LEXIS 52 at *13-14, Slip. Op. 2023-48 (Apr. 11, 2023).

In its second remand redetermination, Commerce attempted to verify Risen's customers but declined to verify when one of its customers declined to participate in in-person verification proceedings. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand*, Ct. No. 20-03912, ECF No. 116-1 at 7-8. The Court remanded to Commerce for a third time, holding that Commerce's verification procedures were unnecessary and onerous given the

---

[1] Commerce explained in the first remand results that there is no precedent for Commerce to apply an adjusted subsidy rate based on adverse facts available, and such an approach would be inappropriate because Commerce has no way to determine the size of the subsidies received by the customers that cannot be verified. First *Risen I* remand results at 20.

circumstances where the verification would be years after the date of the underlying sales and would require the multi-day participation of unaffiliated customers. *Risen Energy Co., Ltd. v. United* States, 665 F. Supp. 3d 1335, 1343-44 (Ct. Int'l Trade 2023).

In its third remand redetermination, Commerce complied with the Court's instruction, under protest, to remove the EBCP from Risen's subsidy rate calculation. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand*, Ct. No. 20-03912, ECF No. 137-1 at 1-6. The Court sustained the third remand redetermination. *Risen Energy Co., Ltd. v. United States*, Consol. Ct. No. 20-03912, 2023 WL 8788862 (Ct. Int'l Trade Dec. 19, 2023).[2]

In proceedings concerning the eighth administrative review of the order, Risen provided in its initial questionnaire response non-use certifications for three of the four customers that it exported to during the period of review. *Risen Energy Co., Ltd. v. United States*, 658 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2023) (*Risen III*) at 1370-1371. A few weeks before Commerce's preliminary results were due to issue, Risen sought to file a non-use certificate for the final customer. Risen subsequently challenged Commerce's determination to reject this certificate as untimely and unsolicited. *Id*. The Court held that Commerce was required under 19 U.S.C. § 1677m(d) to provide Risen with an opportunity to complete its initial questionnaire response with the final non-use certificate and remanded to Commerce with instructions not to pursue onerous verification requirements if Commerce were to choose to attempt verification of Risen's customers. *Id*. at 1371. In its remand redetermination, Commerce explained, under protest, that because it could not effectively verify the information that would be provided in supplemental questionnaires without falling afoul of the Court's instructions, it found non-use of the EBCP

---

[2] The United States' appeal of this case is currently pending before the Federal Circuit. *Risen Energy Co., Ltd. v. United States*, Fed. Cir. No. 24-1524.

without conducting any further verification.  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand*, Ct. No. 22-00231, ECF No. 53-1 at 5-6.  The Court sustained the remand redetermination.  *Risen Energy, Co., Ltd. v. United States*., CIT Consol. Ct. No. 22-00231, 2024 WL 864345 (Ct. Int'l Trade Feb. 29, 2024).

The Court, in several prior cases, has recognized that Commerce cannot meaningfully verify non-use of the EBCP without knowing which banks are involved in the EBCP program. *See Fujian Yinfeng Imp. & Exp. Trading Co. v. United States*, No. 21-00088, 2022 WL 4180886 at *6 (Ct. Int'l Trade Sept. 13, 2022) ("Commerce reasonably explained that absent the {EBCP} information it requested from the Chinese government, {Commerce}'s attempt to verify whether {respondent's} U.S. importers were {EBCP credit} recipients (and thus the beneficiaries of subsidies) amounted to 'looking for a needle in a haystack with the added uncertainty that Commerce might not even be able to identify the needle when it was found.'") (admin. citation omitted); *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 195 F. Supp. 3d 1334, 1355 (Ct. Int'l Trade 2016) (sustaining Commerce's finding that only the government of China could provide the information necessary to verify non-usage of the EBCP); *RZBC Grp. Shareholding Co. v. United States*, No. 15-00022, 2016 WL 3880773 at *4 (Ct. Int'l Trade June 30, 2016) ("Commerce was justified in concluding that the GOC did not act "to the best of its ability" during verification because the GOC refused Commerce's requests for access to the EXIM Bank's database as well as "sample contracts and documentation."), sustained on remand *RZBC Grp. Shareholding Co. v. United States*, 222 F. Supp. 3d 1196, 1202 (Ct. Int'l Trade 2017).

Further, the Court has previously sustained Commerce's explanation as to why the list of partner banks under the EBCP is necessary for Commerce to verify non-use of the program.  *See*

14

*Cooper (Kunshan) Tire Co., Ltd. v. United States*, 539 F. Supp. 3d 1316, 1331 (Ct. Int'l Trade 2021), sustained on remand *Cooper (Kunshan) Tire Co., Ltd., v. United States*, 610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022) (*Cooper II*).  Therefore, Commerce's finding that in this case there is a gap in the record is supported by substantial evidence and is consistent with case law.  Risen's suggestion, that the reasoning of the Court in the prior opinions it cites compels a finding of non-use of Risen, overlooks the line of cases outlined above that sustained Commerce's use of adverse facts available to find that respondents benefitted from the EBCP.

Risen contends that the record in this case compels a finding of non-use.  Risen Br. at 9.  Although the evidence provided by Risen and the government of China may support a suggestion of non-use on its face, it does not resolve the fact that, for verification, Commerce will need to tie Risen's claims to its customers' books and records.  Commerce has explained, in previous instances, that doing so without a list of partner banks from the government of China amounts to "looking for a needle in a haystack{.}" *See Fujian Yinfeng*, 2022 WL at *6 (citing *Wood Mouldings and Millwork Products from China*, 86 Fed. Reg. 67,68 (Dep't Commerce Jan. 4, 2021) (final determination), and accompanying Issues and Decision Memorandum at 20-21).  Claims that Risen has not used the program, or that Risen would be aware of its customers' usage of the program, are not verifiable without a full understanding of the program, which requires that the government of China report a list of partner banks.

As summarized above, Commerce has, in certain instances, found that non-usage of the program is verifiable if a respondent provides non-use certifications on behalf of all of its U.S. customers, and if the respondent and its customers respond to all of Commerce's subsequent requests for information.  IDM at 15.  In this same administrative review, Commerce found that verification of Jinko's reporting was feasible because Jinko was able to provide non-usage

information for all of its customers. *Id.* at 14-15. However, Risen did not provide non-use

certifications on behalf of all of its customers. P.R. 119 at 39-40.

Risen argues that the fact that its non-cooperating customer is unaffiliated, and apparently

unwilling to cooperate with Commerce's requests for information, should mitigate Commerce's

finding that record evidence does not exist to support a finding of non-usage. Risen Br. at 6-7

(citing *Risen III* at 1371-72). However, Commerce is not applying an adverse factual inference

to Risen, nor as a result of Risen's failure to cooperate. If Commerce is unable to verify non-

usage, the application of an adverse factual inference against the government of China, required

by the statute, permits Commerce to find that Risen used the program irrespective of the fact that

Risen itself has cooperated with Commerce's review. *See Fine Furniture*, 748 F.3d at 1373.[3]

Further, the fact that Risen's importer accounts for a relatively small amount of

shipments of subject merchandise made during the period of review is immaterial to

Commerce's finding. Even if Commerce is unable to verify one small importer, Commerce is

left with incomplete factual information as to whether Risen, as a whole, used the program.

Finding non-use for Risen without information from one of its customers, therefore, would be

finding non-use on the basis of partial non-use information, which runs counter to Commerce's

practice. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from

the People's Republic of China*, 87 Fed. Reg. 40,491 (Dep't of Commerce July 7, 2022) (final

results of admin. review), and accompanying Issues and Decision Memorandum at 22 ("It

remains impossible, and contrary to Commerce's practice, to confirm non-use based on partial

non-use information.").

---

[3] Insofar as importers pay cash deposits at rates inclusive of the EBCP subsidy rate, which they would otherwise not be liable for if Commerce can verify non-use, they have a financial interest in complying with Commerce's verification. The extent to which Commerce's verification of customers will unduly burden questionnaire respondents is thus debatable.

For the same reason, Risen's proposed alternative of pro-rating the rate applied to Risen for this program by the proportion of sales accounted for by its cooperative customers, *see* Risen Br. at 14-15, is inconsistent with Commerce's practice and an improper alternative to verification based on the information that Commerce has requested from the government of China.

Finally, Risen argues throughout its brief that Commerce should have identified the lack of non-use certifications from all of its customers as a deficiency in its reporting and afforded Risen an additional chance to supplement the record. Risen Br. at 5-6, 14. Commerce, where it identifies deficiency in a respondent's reporting, is required to grant the respondent an opportunity to remedy such deficiency. 19 U.S.C. § 1677m(d). But Risen incorrectly assumes that non-use certifications are "required" by Commerce. Commerce has found that they are not. Rather, they are "respondents' own proposed alternative path to remediate the deficiencies in the record resulting from the {government of China}'s refusal to fully cooperate." IDM at 14 (citing *Cooper II*, 610 F. Supp. 3d at 1317 (holding that the Act does not require Commerce to request non-use certifications from its customers). Moreover, the record contains no indication that Risen's customer would cooperate with an additional request for information from Commerce. For this reason, Commerce's finding in this case is distinguishable from *Risen III*, wherein Commerce refused to grant Risen an opportunity to supplement the record when Risen provided a full set of non-use questionnaires less than a month before Commerce issued its preliminary results, and *Risen IV*, where the gap in time was lengthened as a result of Commerce's voluntary remand and subsequent litigation.[4] Risen Br. at 8-9. Risen itself acknowledges that its customer was uncooperative, Risen Br. at 6, and notwithstanding Risen's argument, such a lack of

---

[4] The fact that verifications occur years after the underlying sales transactions is a result of Commerce's retrospective assessment of countervailing duties, as provided for in U.S. law. These timeframes can be further extended through litigation.

cooperation is unlikely to have resolved with an additional request for information from Commerce.[5]

Therefore, Risen's arguments are unavailing, and Commerce's final results are supported by substantial evidence and in accordance with law.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment on the administrative record, sustain Commerce's final results in its entirety, dismiss the complaint, and enter judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

Spencer Neff
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce

/s/ Ravi D. Soopramanien
RAVI D. SOOPRAMANIEN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Ben Franklin Station
P.O. Box 480
Washington, D.C. 20044
Telephone: (202) 616-0856
Facsimile: (202) 307-0972
Email: Ravi.Soopramanien@usdoj.gov

April 10, 2023                         *Attorneys for Defendant United States*

---

[5] In any case, if Risen's customer elected to provide Risen with a non-use certification at a later time in the proceeding (but at least 30 days before the scheduled date of Commerce's preliminary results), Risen could have submitted the information pursuant to 19 C.F.R. § 351.301(c)(5) because it was not information that Commerce requested in any questionnaire.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word limitation in Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 5,369 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.


/s/ Ravi D. Soopramanien