UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| RISEN ENERGY CO., LTD.<br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br>　　　　　Defendant,<br>　　and<br><br>AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,<br>　　　　　Defendant-Intervenor. | Court No. 23-0153 |

**PLAINTIFF'S REPLY BRIEF**

　

Gregory S. Menegaz
Alexandra H. Salzman
Judith L. Holdsworth
Vivien Jinghui Wang
**deKieffer & Horgan, PLLC**
Suite 1101
1156 15th St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: May 15, 2024

1

## TABLE OF CONTENTS

I. Introduction ............................................................................................................... 1

II. The Department's Application of The EBC Countervailing Duty Program to Risen Is Unsupported By Record Evidence And Contrary to Law .......................... 1

III. Conclusion and Prayer for Relief ................................................................................ 9

## TABLE OF AUTHORITIES

**CASES**

*Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331 (CIT 2013) ........................... 1

*Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ................................................................................................................................................. 7

*Changzhou Trina Solar Energy Co. v. United States*, 2019 Ct. Intl. Trade LEXIS 138; SLIP OP. 2019-143 (Nov. 18, 2019) ............................................................................................................ 1

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) ................................................................................................................................................. 1

*Dalian Meisen Woodworking Co., Ltd. v. United States*, 2023 Ct. Intl. Trade LEXIS 70 .............. 7

*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) ......................... 2

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364 (Ct Int'l Trade 2023) .................... 5, 7, 9

*Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335 (November 17, 2023) ....................... 4, 8

I.     **Introduction**

Plaintiff Risen Energy Co., Ltd. ("Risen"), hereby files its reply brief in response to Defendant and Defendant-Intervenor's briefs.  *See* U.S. Brief (April 10, 2024); Pet. Brief (April 10, 2024); *see also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020*, 88 Fed. Reg. 44,108 (July 11, 2023) ("Final Results"), *incorporating* Issues and Decision Memorandum ("IDM")*,* **PR366**.  The Department's application of adverse facts available ("AFA") to the China Ex-Im Bank's Export Buyer's Credit Program ("EBC" program) against Risen after they demonstrated non-use of the EBCP remains unsupported by substantial evidence and otherwise contrary to the law.

II.    **The Department's Application of The EBC Countervailing Duty Program to Risen Is Unsupported By Record Evidence and Contrary to Law.**

Defendant and Defendant-Intervenor explain that the AFA finding is not against Risen, but against the Government of China.  However, the Courts have already addressed that this is a false narrative.  It is Risen, the cooperating party, that is bearing the effect of the AFA finding.  Accordingly, while the Courts have found it is permissible to do so, the Courts have instructed that the Department must minimize the AFA impact on the cooperating party.  *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (CIT 2013) (noting that Commerce should "seek to avoid" adversely impacting a cooperating party); *Changzhou Trina II*, SLIP OP. 2019-137 at 11 ("In order to avoid unnecessarily impacting cooperating parties because of the GOC's failure to cooperate, Commerce needs to at least attempt to verify the certifications of non-use in this case."); *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1379 (Fed. Cir. 2012) ("Substitution of a hypothetical "AFA rate" inapplicable to any

individually investigated party is neither suggested nor compelled by the statute, particularly where the sole impact of that substitution will be on cooperating parties.").

Defendant cites to *Fine Furniture*, but the posture of AFA was different in that case. *Fine Furniture* was on AFA finding of electricity due to GOC failure to provide information. The AFA was for the rate applicable, and not about whether Fine Furniture used electricity. There was no doubt that Fine Furniture used electricity, and the gap identified concerning the GOC benefit was information that only the GOC could provide and thus AFA was appropriate. But in the case at hand, the AFA is finding use of the program at all. This directly concerns Risen and the information that Risen could provide from itself and its customers can fill that gap. Further, *Fine Furniture* even case specifically discussed *Changzhou Wujin* and contemplated that the AFA posture would be different when the information is coming from an unaffiliated party. *Fine Furniture* at 1373. In the case at hand, the information is coming from an unaffiliated party more akin to *Changzhou Wujin* and the other EBC cases cited.

Moreover, the so-called gap that Defendant claims was left by the GOC has been rejected by the Courts. *See* Risen R56.2 Br. at 11-13. Specifically, the Department claims "it cannot verify claims of non-usage without the list of partner banks that it requested from the government of China." IDM at 18; *see also* U.S. Br. at 9. In response to the numerous cases cited by Risen finding that this gap does not prevent EBC verification by other means, such as buyer certifications, etc. Defendant's response merely points out that most of these predate Department's new practice verifying non-use. *Id*. at 9. This dismissive response completely misunderstands the findings in those cases and the facts of the cases after this new practice. As an initial matter, we also note that the two cases that Defendant relies on for the proposition that it needs this information, *Cooper Kunshan* and *Changzhou Trina*, were also decided before the

2

Department's new practice with regard to issuing EBC questionnaire, etc. Thus, the Defendant cannot maintain that the cases Risen cites before this practice are irrelevant for that reason and then conversely rely on cases that also predate this practice. Further, *Cooper Kunshan* and *Changzhou Trina* both involved cases where the Respondents had not tried to fill the gap with certifications.

In the cases cited by Risen, the Courts found that the Respondents could fill the gap with their own information, i.e., even without the partner bank information, the gap could be filled with Customer information such that the Department should find non-use. And in the remands of all of those cases cited by Risen, the Department did find non-use. Moreover, the cases since the new practice raised by Defendant concerning issuing questionnaires also do not support Defendant's position.

As this Court is aware from the earlier *Risen* cases cited in Risen's opening brief, the Department has begun a new practice of issuing supplemental EBC questionnaires to customers and then verifying that information. Since this new practice, the Department has verified non-use of the EBC program. Notably, in none of these instances did the Department gain a "list of partner banks that it requested from the government of China" and yet the Department could still verify non-use. Accordingly, it is demonstratably not the case that the Department cannot verify because of this supposed gap. Rather, the Department has successfully verified and found non-use without this "missing" information. Thus, the prior caselaw finding that Respondents' information could fill the gap on non-use of EBC remains very relevant to this proceeding and the Department's current practice.

The Defendant continues to discuss the facts of the two *Risen* cases cited, seemingly to suggest the posture of this case is different, but these cases still stand for the premise that even

with incomplete cooperation from all unaffiliated customers, the Department's finding of non-use is unsupported and not in accordance with the law.

In the sixth administrative appeal, Risen provided certifications from all of its customers but the Department still found as AFA use of the program. On remand, the Department now exercising its apparent new practice, issued supplemental questionnaires to the customers. Not all of the customers responded and the Department found use of the program based on AFA, stating it could not verify. The Court still found the record did not support a finding that this program was used and ordered the Department to attempt to verify. On remand, the Department took the unprecedented approach of attempting verification in person of every single customer that had provided a response to the supplemental EBC questionnaire. When one customer refused verification, the Department found yet again that it could not verify non-use and found use of the program based on AFA.

The Court found this too was improper, concluding "every piece of evidence presented to Commerce and to the court supports the conclusion that Risen's sales were not aided by the EBCP. In the face of substantial evidence of non-use from Risen and its customers, and no evidence of use supported by actual evidence or any reasonable AFA inference, Commerce must not include a subsidy amount for EBCP." *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1344 (November 17, 2023). While it is factually different that every customer did provide a certification in the sixth administrative review, the Department never found this was adequate for finding non-use. At the review and every remand of the sixth administrative appeal, the Department repeatedly found that the failure of any customer to provide anything the Department deemed necessary to find non-use must lead to a finding of use of the program overall. And at every single remand, the Court found this was not supported. Applying this

4

reasoning to this case, the Department's blanket dismissal of the record evidence of non-use in the segment on appeal is not supported by substantial evidence.

In the eighth administrative review, Risen provided certifications for all but one of its customers. The Department thus refused to issue the EBC supplemental questionnaire and found use of the program. The Court also found this was not supported. Dissimilar to this review on appeal, Risen did have the certification from the last customer and tried to submit it on the record but the Department rejected it as untimely. However, the Court's reasoning that the Department's finding of use of the EBC program was unlawful was not premised on the fact that it could provide every single customer's certification. Further, the Court also found it was improper to require the certifications without notifying Risen pursuant to 1677m(d) of a deficiency in not providing the certifications for all customers. *Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364, 1371 (Ct Int'l Trade 2023). This case too does not support the Department's position that it could find use of the EBC program as AFA merely because one customer did not provide a certification.

Thus, like in these cases, the record only supports a finding of non-use. There is absolutely no shred of evidence that any customer used this program. The Department is incorrect that there is no information even about this one small customer. Risen provided the sales contract with the Customer, which had no indication of the Export Buyer's program or any financing for the purchases. Risen Section III Resp. at Exhibit 18, **CR169-177, PR119-124**. Risen responded and certified that it never had been involved in any loan applications under EBC for any customer. Risen understands that the exporter - in this case, Risen itself - must be aware of any such loan in any case because the exporter has to be involved in the EX-IM Bank's loan evaluation and approval proceeding and the post-lending loan management proceeding; this

5

understanding is also confirmed by the GOC's narrative response and exhibits. *See* GOC Initial Questionnaire Resp. (May 27, 2022) at 146-152, Exhibits F-1 through F-3, **CR205-242, PR125-149**. The GOC also confirmed that all Customers, including the one that did not provide a certification, was not listed in the EX-IM bank database. *Id*. at 148, *see also* Exhibit F-4 (screenshots from the EX-IM bank system).

We also correct the Defendant's comment that Customers would have a financial interest in complying with verification and questioning that the questionnaire and verification is burdensome. U.S. Br. at 16, n3. Risen itself is the importer of record and not the unaffiliated Customers. The Customers have agreed to cooperate and provide certifications due to their relationship with Risen and not because of any financial incentive that will impact them directly. Thus, it is completely understandable that the one Customer did not provide the certification given they had disputes with Risen over business matters. Risen Section III Resp. at 40, **CR169-177, PR119-124**. Further, the Courts in the *Risen* and *Meisen* cases have already agreed with the obvious fact that providing substantial financial documentation in the EBC questionnaire (that the Department did not even issue in this review) is highly intrusive and burdensome.

Notably, the Department in each of the Solar appeals discussed above ultimately found complete non-use of the program, albeit under protest, even though the Department did not have complete information for all Customers. This one Customer, from whom Risen failed to get a certification from by the original deadline, represents less than 1% of Risen's sales. No information on the record suggests that this sole customer or any other customer used this program.

Lastly, at a minimum these solar cases support a pro rata adjusted rate or customer specific rate. In the face of imperfect records in the two Risen appeals and the Meisen appeal

6

(cited further below), Plaintiffs proposed that at a minimum the Department has no basis to apply AFA to the companies that provided certifications (or in later remand, that provided questionnaires or agreed to verification). *See Risen Energy Co. v. United States, 2023 Ct. Intl. Trade LEXIS 52*, \*14 (discussing that the Department had no basis to apply AFA with respect to Customers that did provide requested information); *Dalian Meisen Woodworking Co., Ltd. v. United States*, 2023 Ct. Intl. Trade LEXIS 70, \*23 (discussing that the Department was not missing information with respect to the Customers that did provide requested information); *see also Changzhou Trina I*, 352 F. Supp. 3d at 1327 (although the Department can choose among FA or AFA to fill the record, the "choice must fill in the information that is actually missing."). The Risen and Meisen Courts both ordered that a pro rata rate would be appropriate if the Department declined to find overall non-use.

The Department position that it could not issue the EBC supplemental questionnaire much less verify the non-use certifications for the Customers that did provide the certifications is illogical and contrary to this Court precedent. In other words, *arguendo*, if the one Customer did use the EBC program, that has absolutely no bearing on whether another Customer used the EBC program. Accordingly, even if assuming as AFA (which for the reasons discussed above, would still not be supported by the record) that the one Customer did benefit from the EBC program, the Department could verify and find non-use of the EBC program by the other Customers. There is absolutely no relation between one customer's potential use of EBC program and another customer's potential use of the program. Further, since the program is about a loan for purchasing merchandise, one customer's use of the EBC program certainly cannot exceed the value of its purchases from Risen and the benefit could not exceed the purchase value. Accordingly, Risen proposed a pro rata rate as an alternative if the Department continues to find

7

it cannot find non-use overall. The Department has no basis to apply AFA to 99% of Risen's sales where its Customers provided evidence of non-use in the form of certifications and the Department requested no further information.

Alternatively, Risen has also proposed that the Department can issue Customer-specific Customs instructions such that the EBC program is removed for sales to Customers that provided certifications. The Department issues Customer specific instructions in the antidumping cases on a regular basis. In response to these arguments, the Department has generally just defaulted that this is not their practice. But that does not mean that it cannot become the Department's practice given the case law finding the Department's approach is unlawful and given the uniqueness of the EBC program.

Ultimately, the record in the instant review contains no evidence that Risen or its Customers used or benefitted from the EBC program. Instead of confronting the information provided by Risen itself and its Customers or requesting further reasonable information from them on this program, the Department unreasonably determined that Risen could not cure the alleged GOC questionnaire deficiency. The Court should remand and order the Department to consider all information on the record and find non-use of the program. As the Court found in the sixth review appeal of Risen, "every piece of evidence presented to Commerce and to the court supports a conclusion that Risen's sales were not aided by the EBCP." *Risen Energy Co. v. United States*, 665 F. Supp. 3d 1335, 1344. The record contains no evidence of use of this program and the Court can rule that the Department cannot find use of this program in light of the complete lack of evidence on this record. In so doing, the Court could take into account the Department's practice of extending out proceedings until Commerce is cornered into requesting burdensome information from unaffiliated customers well after the period of review at the

continued detriment to the respondent's ability to coax cooperation from its buyers. At this point it is already more than three years since the review period of 2020.

Alternatively, at a minimum the Court should Order the Department to attempt to reasonably verify non-use of the program for the Customers. To that end, we conclude with this Court's very relevant finding in Risen:

> On remand, Commerce may choose to attempt to verify the customer certifications. Throughout the long history of EBCP litigation in the court there has been an absolute dearth of evidence that any U.S. customer has ever used the program. No party has ever demonstrated that a U.S. customer has received financing through the EBCP. Thus, if Commerce chooses to attempt verification, the court expects that Commerce will not pursue onerous verification requirements. Commerce is attempting to verify non-use by U.S. companies that Commerce has no statutory right to investigate, many of whom are unaffiliated with respondents, and years after the customers conducted business with the respondents. If there were more evidence that Commerce would find anything relevant in the records of the non-affiliate customers, then perhaps rigorous verification would be necessary. Although why onsite visits would be helpful has not been explained. For now though, the court is unconvinced that Commerce would find any EBCP use. Commerce may attempt to verify but only to the extent it does not overly burden voluntary participants.

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364, 1371-1372.

### III.    Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not supported by substantial evidence or in accordance with the law. Plaintiff respectfully requests that the Court remand this case for redetermination of the issues presented in this brief.

          Respectfully submitted,

          /s/ Gregory S. Menegaz
          Gregory S. Menegaz
          Alexandra H. Salzman
          Judith L. Holdsworth

|  |  |
|---|---|
|  | Vivien Jinghui Wang[**] |
|  | **DEKIEFFER & HORGAN, PLLC** |
|  | Suite 1101 |
|  | 1156 15th St., N.W.  20005 |
|  | Tel: (202) 783-6900 |
|  | email:  gmenegaz@dhlaw.com |
| Date: May 15, 2024 | *Counsel to Plaintiff* |

---

[**] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **2,867** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street, N.W.  20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to Plaintiff*

11