C-570-980<br>
Remand<br>
Slip Op. 24-94<br>
POR:  01/01/2020 – 12/31/2020<br>
**Public Document**<br>
E&C/OVII:  LW

*Risen Energy Co., Ltd., v. United States*
**Court No. 23-00153, Slip Op. 24-94 (CIT August 16, 2024)**
**Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand opinion and order of the U.S. Court of International Trade (the Court) in *Risen Energy Co., Ltd., v. United States*, Slip Op. 24-94 (CIT August 16, 2024) (*Remand Order*).  These final results of redetermination concern the 2020 administrative review of crystalline silicon photovoltaic cells, whether or not assembled into modules (solar cells), from the People's Republic of China (China).[1]  Specifically, these final results of redetermination concern the *Final Results*, wherein Commerce found that Risen Energy Co., Ltd. (Risen) used the Export Buyer's Credit program (EBCP).  The domestic interested party in the underlying administrative review is the American Alliance for Solar Manufacturing (the Alliance).[2]

Pursuant to the *Remand Order*, we have removed the EBCP rate from Risen's countervailing duty (CVD) rate.

---

[1] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2020*, 88 FR 44108 (July 11, 2023) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] The members of the Alliance are First Solar, Inc.; Hanwha Q CELLS USA, Inc.; and LG Electronics USA Inc.

## II. BACKGROUND

In the *Final Results*, Commerce relied on adverse facts available (AFA) in finding that a respondent benefited from the EBCP because of a failure to cooperate by the Government of China (GOC). Specifically, Commerce determined that Risen used the program in light of the GOC's failure to provide an adequate explanation of the operation of the program, documentation of the 2013 revisions to the administrative rules regulating the program, and a list of partner/correspondent banks.[3] The GOC claimed that neither respondent used this program. However, we found that, absent the information requested, Commerce was unable to confirm non-use of the program. Further, we determined that the GOC was the only party that could answer questions about the internal administration of this program. Therefore, we found that the GOC had not cooperated to the best of its ability and, as AFA, found that Risen used and benefited from this program.

Risen provided non-use certifications for over 98 percent of its sales from all but one of its U.S. customers, and a sales contract for the non-cooperative customer. Because Risen was unable to provide complete information for all of its importers/customers, the record continued to contain evidentiary gaps from the GOC's non-cooperation as to the issue of whether certain U.S. importers/customers of Risen used the EBCP. As such, we assigned an AFA rate of 5.46 percent *ad valorem* for the EBCP to Risen.

## III. FINAL ANALYSIS

On August 16, 2024, the Court directed Commerce on remand to either attempt verification of the non-use certifications to determine more accurately what proportion of the sales Risen is able to account for, or to remove at least the portion of the EBCP rate attributable

---

[3] *See Final Results* IDM at Comment 1.

to the customers demonstrating non-use from the calculation of Risen's overall subsidy rate.[4] The Court found that Commerce was reasonable in finding: (1) that the GOC's noncooperation created a gap in the record; and (2) that a sales contract was not an adequate substitute for a non-use certificate and thus, Risen had failed to fill the entire gap in the record created by the GOC in this case. Further, the Court did not require Commerce to reopen the record and verify because Risen has given no indication that it would be able to remedy the deficiency. Finally, the Court stated that Commerce must account for the portion of non-use certificates that Risen has provided to Commerce.[5]

We note that Commerce's practice with respect to the EBCP continues to develop as we learn more about the program. In two ongoing investigations, Commerce preliminarily declined to apply AFA to this program based on responses received from the GOC on the record of those investigations.[6] Commerce is verifying the GOC's responses in those investigations, and our practice may change accordingly depending on the outcome of those verifications and Commerce's final determinations.

Typically, Commerce's practice with respect to the EBCP is to request further information in support of respondents' non-use claims. If Commerce receives non-use certifications from all of a respondent's customers, Commerce will issue supplemental questionnaires to those customers to confirm that they have not received export buyer's credits. Commerce will not normally issue supplemental questionnaires to a respondent's customers in

---

[4] *See Remand Order* at 14.
[5] *Id.* at 5-14.
[6] *See Certain Alkyl Phosphate Esters from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination*, 89 FR 80870 (October 4, 2024), and accompanying Preliminary Decision Memorandum (PDM) at 45; *see also 2,4-Dichlorophenoxyacetic Acid from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination*, 89 FR 74906 (September 13, 2024), and accompanying PDM at 38.

an instance where less than all of a respondent's customers provide non-use certifications, because Commerce is not required to make findings of non-use on partial information.

Then, if Commerce finds verification to be warranted or if verification is statutorily required, Commerce will verify that information.[7]  Verification is intended to be a completeness test.[8]  To the extent that Commerce verifies less than 100 percent of the information upon which it relies to make a determination, it does so in the manner of a "spot-check."[9]  A spot check is intended to confirm the accuracy of a respondent's reported information as a whole, and by its nature is only effective if a respondent makes all of its reported information available for verification.  Commerce cannot verify via a "spot-check" information which is not made available for verification, and therefore must assume that information which is not provided is unverifiable.

Risen did not provide non-use certifications for all its sales.  The non-use certifications it provided account for 98 percent of its total sales.  Thus, Risen's claimed non-use of this program, had Commerce attempted verification here, could not be completely verified.

The Court found that customers accounting for 98 percent of Risen's sales have given every indication that they are able to reasonably fill the gap, and AFA is not appropriate as applied to the 98 percent of sales for which the cooperative customers account.[10]  Further, the Court did not limit Commerce from utilizing a particular method to pro-rate or from using any rate or rates that are otherwise reflective of the record evidence.[11]

---

[7] *See generally Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287 (CIT 2022) (describing and sustaining Commerce's explanation of its practice with respect to the EBCP).
[8] *Id.*, 610 F. Supp. 3d at 1300.
[9] *Id.*, 610 F. Supp. 3d at 1298 n.7.
[10] *See Remand Order* at 14.
[11] *Id.*

We continue to find, as we did in the underlying review, that pro-rating Risen's subsidy rate to account for the number of non-use certifications provided by its U.S. customers is inconsistent with Commerce's practice and the AFA hierarchy. We also find that here, particularly given the small amount of sales accounted for by Risen's sole missing non-use certification, pro-rating Risen's rate to account for the missing non-use certification would have a negligible effect on the overall subsidy rate versus removing the rate altogether. Therefore, given the unique facts of this case, in compliance with the Court's order to "remove at least the portion of the EBCP rate attributable to the customers demonstrating non-use from the calculation of Risen's overall CVD rate,"[12] we have removed the 5.46 percent EBCP AFA rate from Risen's total countervailable subsidy rate.

## IV.    INTERESTED PARTY COMMENTS

On October 25, 2024, Commerce issued its Draft Remand Results.[13] On November 5, 2024, Risen and the Alliance each submitted comments.[14]

**Issue:  Remove the EBCP AFA Rate**

*Risen's Comments*

The following is verbatim summary of Risen's argument. For further details, *see* Risen's Comments at 2-4.

> Risen maintains, as it did before {Commerce} that the record as a whole still supports a complete finding of non-use based on the substantial evidence provided by Risen and the GOC and that nothing prevented {Commerce} from verifying the information on the record regarding non-use. However, Risen supports Commerce's ultimate determination to remove the EBCP AFA rate altogether.

---

[12] *Id.*
[13] *See* Draft Results of Redetermination Pursuant to Court Remand, *Risen Energy Co., Ltd., v. United States*, Court No. 23-00153, Slip Op. 24-94 (CIT August 16, 2024), dated October 25, 2024 (Draft Remand Results).
[14] *See* Risen's Letter, "Draft Remand Comments," dated November 5, 2024 (Risen Comments); *see also* Alliance's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated November 5, 2024 (Alliance's Comments).

5

*Alliance's Comments*

The following is verbatim summary of the Alliance's argument. For further details, *see* the Alliance's Comments at 2-4.

> {Commerce} erred in its draft remand results by removing Risen's EBCP rate from the company's CVD rate. While the Alliance understands that the agency is attempting to comply with {the Court} remand order, {Commerce} should continue to {AFA} in finding respondent Risen to have used the EBCP. As {Commerce} determined, and the Court rightly affirmed, the {GOC} failed to provide complete information regarding the operations of the EBCP, which created a gap in the record, and Risen was unable to fill this gap in the record due to its failure to provide non-use certifications for all of its U.S. customers. It is therefore impossible for {Commerce} to verify non-use, as {Commerce} rightly explains in its draft remand results. Thus, rather than reward the respondent for noncompliance, {Commerce} should continue to apply AFA based on the GOC's refusal to cooperate fully and should not reduce or remove Risen's EBCP rate.

**Commerce's Position:**

Commerce continues to find, on remand, that Risen did not use the EBCP. While we found that Risen failed to provide non-use certifications sufficient to fill the gap in the record created by the GOC, the Court disagreed, and ordered us to reflect the non-use certifications provided by Risen.[15] We maintain that <u>fully</u> verifying non-use here would be impossible without cooperation from all of Risen's period of review (POR) customers, and in that respect agree with the Alliance. However, given that Risen's non-use certifications account for over 98 percent of its total POR sales, any AFA that Commerce would apply to Risen here, while still complying with the Court's order, would be negligible. Finally, we emphasize that, in the underlying review, we applied AFA to the GOC, and not to Risen. Therefore, Risen is not being "rewarded for noncompliance," as the Alliance suggests.

---

[15] *See Remand Order* at 14.

## V. FINAL RESULTS OF REDETERMINATION

As discussed above, we have reconsidered our findings in the EBCP at issue. Should the Court sustain these final results of redetermination, we intend to issue a *Timken* notice[16] with an amended final results providing the updated subsidy rate in the third column of the below chart, consistent with the discussion above, and issue appropriate customs instructions to U.S. Customs and Border Protection.

|  | Subsidy Rate (percent) | |
|---|---|---|
| **Subsidy Programs** | **Amended Final Results** | **Pursuant to Redetermination** |
| EBCP | 5.46 | 0.00 |
| Other Subsidy Programs | 13.49 | 13.49 |
| Total Subsidy Rate | 18.95 | 13.49 |

11/13/2024

X _____

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia,
Deputy Assistant Secretary
  for Enforcement and Compliance.

---

[16] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*).